**B & B LINES, INC., Appellee,**

v.

**RYAN FREIGHT LINES, INC.,
Appellant.**

**No. 51920.**

Court of Appeals of Oklahoma,
Division No. 1.

Sept. 25, 1979.

Released for Publication by Order of
Court of Appeals Oct. 25, 1979.

Edward W. Smith, Oklahoma City, for appellee.

Lynn & Clark by Steven E. Clark, Oklahoma City, for appellant.

ROMANG, Presiding Judge:

The Defendant appeals from a judgment for the Plaintiff after trial to the court on contract damages. Only the measure of damages is disputed on appeal.

The Plaintiff transportation company turned over to the Defendant company an over-the-road trailer. The terms of this arrangement were determined by an industry-wide equipment interchange agreement. While in Defendant's possession the trailer was damaged. Under the terms of the interchange agreement if equipment is damaged while in interchange service the carrier in possession (the Defendant) shall repair the equipment or bear the cost thereof. If the "apparent cost" of the repairs exceeds $25 (as it did herein) "the consent of the owner shall be obtained by the using carrier before it causes repairs to be made." When damaged and "while settlement therefor or repairs thereto are pending" the Plaintiff "shall promptly receive from the . . . [Defendant] equipment of like condition, quality, and size, or, in lieu thereof, at its [i. e. Plaintiff's] option, compensation equal to the applicable minimum daily rental . . . [i. e. $12 per day]."

After the damages were incurred the trailer was not repaired and remained in Defendant's possession from September 8, 1975 (date of damage) until at least January 13, 1978 (date of trial). At $12 per day the trial court awarded Plaintiff $7,488 under the damage provision of the contract.

The Defendant attacks this amount essentially under the theory that the Plaintiff failed to mitigate its damages in that it failed to seek possession so it could effectuate repairs and that it failed to give its consent to Defendant's making repairs, and that in any event the damages were excessive. Neither argument is tenable on appeal.

■ The action is one at law tried to the court sitting without a jury. The court's findings of fact are equivalent to a jury verdict on appeal and, the finding being general, the judgment is presumed to include all the facts necessary if supported by any probative evidence. This is especially vital where the burden to show a failure to mitigate damages rests on the Defendant. *Consolidated Cut Stone Co. v. Seidenback*, 181 Okl. 578, 75 P.2d 442 (1938) and *Staner v. McGrath*, 174 Okl. 454, 51 P.2d 795 (1936).

■ While the question of Plaintiff's failure to seek possession was disputed there is evidence that it acquired estimates, discussed those estimates with Defendant and frequently sought a resolution of the problem. While there is no explicit evidence that Plaintiff gave consent for the Defendant to effectuate repairs we read the contract as requiring the Defendant to seek out Plaintiff's consent. There is no evidence Plaintiff's consent was requested. Additionally, the context of the negotiations is sufficient for the trial court to infer that consent, if requested, was available.

■ Defendant also points out that the damages exceed the value of the trailer. The only evidence on the value of the trailer before the injury came from the president of the Defendant company. He testified that the trailer was worth about $6,000 prior to its being damaged. Defendant cites *Missouri Pacific Ry. Co. v. Qualls*, 120 Okl. 149, 250 P. 774 (1926) for the proposition that the amount of recovery cannot exceed the value of the property before the damages. But *Qualls* was an action for tortious injury to personal property under the predecessor to 23 O.S.1971, § 61. The current action is in contract for a daily fee during the period Plaintiff was denied the use of its trailer. Indeed, the damages disputed on appeal are not damages for breach of a contract but are in the nature of liquidated damages. In the interchange agreement the parties have stipulated what the damages will be for the Plaintiff's loss of use of the trailer. Under 15 O.S.1971, § 215 "[a] stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." In our case the actual

damage is the loss of use with resulting loss of rental or other income. Liquidated damages are permitted where the actual damages are by their nature uncertain and where they are not clearly disproportionate to probable actual harm. *Consolidated Flour Mills Co. v. File Bros. Wholesale Co.*, 110 F.2d 926 (10th Cir. 1940); and Restatement of Contracts § 339 (1939).

■ In this case it is not contended that a $12 per day fee is an unreasonable rental fee. The contract merely provides a specific fee for the actual damages resulting from the Plaintiff's loss of use of the trailer. What seems contested is that the per day fee for such a long period is unreasonable because had Plaintiff had the trailer it could not have rented it each day. Unfortunately there is no evidence on this issue. On its face it is clear that the Plaintiff did not have the use of the trailer for an extended period and the contract fixes the rate of damages for loss of use. There is nothing manifestly disproportionate in the parties agreeing that the Defendant will pay the Plaintiff $12 for each day it keeps Plaintiff's trailer. Nor does the fact that the accrued contract damages exceed the pre-damage value of the property change this view. Contract damages, with exceptions, seek to place the non-breaching party in the position he would have been had the contract been performed. *Groendyke Transport, Inc. v. Merchant*, Okl., 380 P.2d 682 (1962). There is no principle of law that precludes a party to a voluntary exchange from receiving a greater return on its investment than the original cost of the investment. The situation is different where personal property is tortiously damaged as in *Qualls, supra*. There the loss sustained arises from an involuntary relationship and the policy is the immediate compensation for the loss, i. e., value just before the damage, and not the enforcement of the parties' expectations.

The judgment of the trial court is affirmed.

AFFIRMED.

REYNOLDS and BOX, JJ., concur.